# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUDY WILSON, on behalf of herself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**QUEST DIAGNOSTICS INC.,**<br><br>Defendant. | Civ. No.: 2:18-11960<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Judy Wilson ("Plaintiff") brings this putative class action against Defendant Quest Diagnostics Inc. ("Quest") for violating the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.* Now before the Court is Quest's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332(d)(2), and decides the matter without oral argument. Fed. R. Civ. P. 78(b). Upon consideration, Quest's motion to dismiss is **DENIED**.

## I.  BACKGROUND[1]

Quest provides diagnostic testing services at laboratories nationwide. On June 20, 2018, Plaintiff answered an unsolicited call to her cell phone from Quest. Am. Compl. ¶¶ 1, 12, ECF No. 6. The Quest representative told Plaintiff the purpose of the call was to "collect a debt owed by someone other than Plaintiff." *Id.* ¶¶ 2, 15. Plaintiff never gave Quest permission to call her cell phone, never had any contact with Quest prior to receiving the call, and never provided Quest her phone number. *Id.* ¶¶ 12, 15.

Upon answering the call, Plaintiff heard a momentary pause before a representative started speaking to her. *Id.* ¶ 14. The pause allegedly indicated that Quest used a predictive dialer, a device used to automatically dial telephone numbers. *Id.* ¶¶ 1, 13–14.

---

[1] The Court draws the factual background from the allegations contained in the complaint, which it accepts as true. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

1

Plaintiff asserts this conduct violates the TCPA's prohibition on placing non-emergency calls to her cell phone using an automatic telephone dialing system ("ATDS") without having the prior express consent of the person called. *Id.* ¶ 10 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). As a result, Plaintiff filed a two-count class action complaint under the TCPA, seeking injunctive relief and statutory damages. Am. Compl ¶¶ 28–32 (Count I), ¶¶ 33–37 (Count II).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "But [courts] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James*, 700 F.3d at 679 (citations omitted). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

To assert a TCPA claim, a plaintiff must show the defendant: (1) called her cell phone; (2) using an ATDS; (3) without her prior express consent. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012) (citing 47 U.S.C. § 227(b)(1)(A)). Quest challenges only the second element—that Plaintiff failed to allege that Quest placed a call to her cell phone using an ATDS. Def.'s Mem. 8, ECF No. 7-1.

### A. Defining an Automatic Telephone Dialing System

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). What falls within the statutory definition has been the subject of extensive rulemaking and debate.

#### 1. Federal Communications Commission's Regulatory Orders

The Federal Communications Commission ("FCC") has issued several rulings interpreting what kinds of equipment qualify as an ATDS under the TCPA. First in 2003, noting the evolving changes in technology, the FCC found that a predictive dialer—i.e., "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls"—"falls within

the meaning and statutory definition of [an ATDS]." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091, 14093 (2003) ["2003 Order"]. Even though predictive dialers dial from lists of phone numbers (as opposed to generating random or sequential numbers), "[t]he basic function of such equipment, however, has not changed—[it is] the *capacity* to dial numbers without human intervention" that qualifies a device as an ATDS. *Id.* at 14092; *see* Am. Compl. ¶ 14.

In 2008, the FCC reaffirmed that a predictive dialer met the ATDS definition and fell under the TCPA's ambit. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008) ["2008 Order"]. And in 2012, the FCC again stressed that the TCPA's definition of an ATDS "covers any equipment that has the specific *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15392 n.5 (2012) ["2012 Order"] (citing 2003 Order at 14092).

In 2015, the FCC "reiterate[d] that predictive dialers . . . satisfy the TCPA's definition of 'autodialer' [or ATDS]." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7972 (2015) ["2015 Order"]. The FCC "reaffirm[ed] [its] previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') . . ., including when the caller is calling a set list of consumers." *Id.* at 7971–72. The agency also expanded the concept of capacity, finding that "the capacity of an [ATDS] is not limited to its current configuration but also includes its potential functionalities" with modifications such as software changes. *Id.* at 7974.

### 2. Precedential Interpretation of the FCC's Orders and TCPA

After issuing the 2015 Order, Hobbs Act petitions were filed in two federal courts of appeal.[2] The Judicial Panel on Multidistrict Litigation consolidated the petitions before the D.C. Circuit, which became the sole forum to challenge the 2015 Order. *See* Consolidation Order, *ACA Int'l v. FCC*, MCP No. 134, ECF No. 3.

The D.C. Circuit struck down the 2015 Order's statutory interpretation of the term "capacity," as "utterly unreasonable in the breadth of its regulatory [in]clusion" because, *inter alia*, a "straightforward reading of the [FCC's] ruling invites the conclusion that all smartphones are [ATDSs]." *ACA Int'l v. FCC*, 885 F.3d 687, 699 (D.C. Cir. 2018) (citation omitted). The D.C. Circuit thus invalidated the 2015 Order since the FCC's "most recent effort falls short of reasoned decisionmaking" in providing contradicting guidance on what constitutes an ATDS. *Id.* at 701. In doing so, the D.C. Circuit did not specify that a particular ATDS definition was wrong or what types of devices would qualify as an ATDS.

---

[2] The Hobbs Act provides courts of appeal "'exclusive' and time-limited jurisdiction over challenges to [FCC] orders." *Manuel v. NRA Grp. LLC*, 722 F. App'x 141, 144 n.5 (3d Cir. 2018) (citing 28 U.S.C. §§ 2342(1), 2344).

3

In *Dominguez v. Yahoo, Inc.*, the Third Circuit interpreted *ACA International* as binding and held it would interpret the TCPA's "statutory definition of an autodialer as we did prior to the issuance of [the] 2015 [Order]." 894 F.3d 116, 119 (3d Cir. 2018). The court then clarified that the issue of whether a device qualifies as an ATDS depends on its *present* capacity, not its "latent or potential capacity." *Id.* (emphasis added).

This Court finds the Third Circuit's interpretation of the TCPA "as we did prior to the issuance of the 2015 [Order]" to mean that the D.C. Circuit did not invalidate the 2003 and 2008 Orders, only the 2015 Order. *See id.*[3] Therefore, a predictive dialer qualifies as an ATDS so long as it has "the [present] *capacity* to dial numbers without human intervention." 2003 Order at 14092 (alteration to reflect precedent); *Dominguez*, 894 F.3d at 119 ("The only remaining question, then, is whether Dominguez provided evidence to show that the Email SMS Service had the *present* capacity to function as [an ATDS]." (emphasis added)).

Quest takes issue with this interpretation, arguing *ACA International* and *Dominguez* invalidated the prior FCC Orders as well as the 2015 Order. Def.'s Mem. at 11. But the court in *ACA International* only struck down the *expanded interpretation* in the 2015 Order as unreasonable. 885 F.3d at 701–02 (emphasis added). Although the D.C. Circuit expressed doubts about the previous FCC Orders, it did so only to show the potential contradictions with the 2015 Order. *Id.* at 701–03; *see Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1321–22 (S.D. Fla. 2018) ("[W]hat *ACA International* did was to reject the FCC's have-your-cake-and-eat-it-too approach . . . . But what *ACA International* did not do is endorse one interpretation over the other, even implicitly."). Likewise, *Dominguez* made no proclamation declaring the prior FCC Orders invalid.[4]

### B. Adequacy of Plaintiff's Allegations

Quest contends Plaintiff has failed to plead sufficient facts alleging that Quest called her cell phone using an ATDS. Def.'s Mem. at 8. The Court disagrees.

---

[3] The D.C. Circuit's focus on "present capacity," as opposed to potential capacity, reaffirms this conclusion because the expanded interpretation of "capacity" is what the court found problematic, remarking that "[i]f a device's 'capacity' includes functions that could be added through app downloads and software additions, and if smartphone apps can introduce ATDS functionality into the device, it follows that all smartphones, under the Commission's approach, meet the statutory definition of an [ATDS]." *ACA Int'l*, 885 F.3d at 697 ("If every smartphone qualifies as an ATDS, the statute's restrictions on autodialer calls assume an eye-popping sweep.").

[4] Federal courts have cited *Dominguez* in contradictory ways on questions over the validity of prior FCC orders. *Compare Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049 (9th Cir. 2018) (citing *Dominguez* as authority that prior FCC rulings are no longer binding), *with Ramos v. Hopele of Fort Lauderdale, LLC*, No. 17-62100-CIV, 2018 WL 4568428, at *2 (S.D. Fla. Sept. 20, 2018) (citing *Dominguez* as authority that prior FCC rulings remain valid), *appeal docketed*, No. 18-14456 (11th Cir. Oct. 22, 2018).

Plaintiff has sufficiently alleged that Quest contacted her cell phone using a predictive dialer—a device considered an ATDS under binding precedent. When she "answered [Quest's] calls, she heard a momentary pause before someone started speaking to her." Am. Compl. ¶ 14. Dead air after answering the phone is indicative that the caller used a predictive dialer. *See* 2003 Order at 14022 n.31. Plaintiff further alleges Quest called her "to collect a debt owed by someone other than Plaintiff." Am. Compl. ¶ 15. Thus, it is plausible that Quest used a predictive dialer to call Plaintiff. And since a predictive dialer can qualify as an ATDS under the TCPA, *see supra* Part III.A, Plaintiff adequately states a claim for relief. Moreover, courts in this Circuit have found such allegations sufficient to allege a TCPA claim. *See Sieleman v. Freedom Mortg. Corp.*, Civil Action No. 17-13110 (JBS/JS), 2018 WL 3656159, at *6 (D.N.J. Aug. 2, 2018) (collecting cases).

During discovery, the parties can explore the actual configuration of the dialing equipment used to call Plaintiff, as such evidence could shed light on whether Quest used a device capable of making autodialed calls. *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) ("[C]ourts may need to investigate, on a case-by-case basis, how much is needed to activate a device's autodialing potential in order to determine whether it violates the TCPA.").

Quest cites this Court's decision in *Trumper v. G.E. Retail Bank*, 79 F. Supp. 3d 511 (D.N.J. 2014), to mean it could not have used an ATDS because the call was made to a specific individual, so it was not placed at random. Def.'s Mem. at 20. But in *Trumper*, this Court dismissed the plaintiff's claim for failure to allege use of an ATDS because, among other deficiencies, the pleading contained no allegations "about the calls [the plaintiff] received." *Id.* at 513. Unlike in *Trumper*, Plaintiff has pleaded allegations to support a reasonable inference that Quest placed the call using an ATDS. Plaintiff elaborated on the content of the call (to collect a debt) and alleged to have heard a pause upon answering. Am. Compl. ¶¶ 14–15. At the motion to dismiss stage, that is sufficient. *See, e.g.*, *Carrera v. Major Energy Servs., LLC*, No. 15-3208, 2016 WL 7183045, at *2 (D.N.J. Mar. 29, 2016) (finding an ATDS allegation plausible when the plaintiff alleged that upon answering the defendant's calls "there was a brief pause before a live operator got on the line and began talking" (quotation marks and citation omitted)).

The other cases Quest cites as authority that a predictive dialer is not an ATDS unless the device can dial and call numbers randomly or sequentially were decided at summary judgment, meaning the court had the benefit of a fully developed record showing the types of devices used to contact plaintiffs. *See Fleming v. Associated Credit Servs., Inc.*, Civ. No. 16-3382, 2018 WL 4562460, at *10 (D.N.J. Sept. 21, 2018); *Gary v. TrueBlue, Inc.*, Case No. 17-cv-10544, 2018 WL 3647046, at *6–*7 (E.D. Mich. Aug. 1, 2018), *appeal docketed*, No. 18-2281 (6th Cir. Nov. 5, 2018); *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 800 (D. Ariz. 2018); *Marshall v. CBE Grp., Inc.*, Case No.: 16-cv-02406, 2018 WL 1567852, at *7 (D. Nev. Mar. 30, 2018). At this stage, the Court only tests the sufficiency of the allegations. *Iqbal*, 556 U.S. at 678–79. With the benefit of discovery as to the type of equipment Quest used and the nature and extent of Quest's

contacts with Plaintiff, the case will be well postured to assess Quest's conduct under the TCPA. The Court will thus "unlock the doors of discovery." *Id.* at 678.

## IV. CONCLUSION

Accordingly, Quest's motion to dismiss Plaintiff's Amended Complaint is **DENIED**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Dated: December 10, 2018**